My name is Jim Frush, with me is Jack Lovejoy. We represent James Allen, II. Mr. Allen is currently incarcerated in federal prison at Atwater. This is a motion to suppress issues. I would say there are four distinct categories that we're looking at are issues. First and most importantly is the issue of the suppression of Mr. Allen's statement that he made after he witnessed the illegal sweep of his house. The second issue would be the validity of the search warrant once the excise portions due to the illegal search are made. It's also a function there, Your Honors, of when we get into this third issue of the Franks matters and particularly the omissions from the warrant by the large group of sheriff's deputies. I gather that the government, and I'll ask the government to let me know if this is correct, I gather the government now concedes that the original search may have had some unconstitutional elements to it. That's correct, Your Honor. So what we're really talking about here is whether there is a Frank hearing necessary to sort out whether the balance of the information that was not constitutionally suspect was sufficient to provide probable cause for the warrant. Is that fair? No, Your Honor. Okay, tell me why. The important issue here that I think mandates reversal is the statement of Mr. Allen that he made. That was not suppressed by the district court. He sees the search. Admittedly now they admit that in their opening brief that the search is illegal. Deputy Feske says that he sees two shotgun shells in a box in the garage. He comes out and he tells Deputy Fagan that. Deputy Fagan turns to Mr. Allen and he says, we are arresting you now for domestic violence, assault with domestic violence. But still, sir, aren't we, counsel, aren't we really back to the issue of you've got certain statements that are in the affidavit that are not challenged based upon what the government's talking about? And isn't a Frank hearing really what we need to have here, if you're correct, to determine whether there was sufficient probable cause to go forward on this? You're talking about some of the sub parts of the evidence that would be considered at such a hearing. No, Your Honor. I respectfully suggest that if you hold that the statements he made should have been suppressed, and this is under the Shetlar decision that Judge Reinhart authored last December, if you decide that the statement should be suppressed, reversal is mandated, even before you get to the Franks hearing. That alone justifies reversal here. And the Shetlar case that was authored last December, by his honor, controls here. In fact, this is a much stronger case. In Shetlar, you had a sweep of a garage that was admitted to be proper, and then the illegal sweep of the house, and they tried to justify getting the statements in based on the legal sweep of the garage. We don't have that here. We have an illegal sweep of the house. There's a clear Fourth Amendment violation. And the Shetlar decision by Judge Reinhart and others from your group. Who wrote Shetlar? Why don't we stipulate that my honorable colleague wrote that opinion? I will. I certainly agree with that. The point I'm trying to make, Your Honors, is that it totally controls here. This is a much stronger case in Shetlar. The statements were made very quickly thereafter, within two hours, not the 36 hours in Shetlar. There were no intervening circumstances, such as the appointment of a lawyer. But suppose that without that statement, there were probable cause, if you just exercise that. No, because Mr. Allen decided to plead guilty, knowing that he would be going to trial facing those statements coming in. The district court said those statements would come in. The district court did not suppress those statements. But isn't this an appeal from a conditional plea? It was a conditional plea based on the fact that he was going to contest that issue of suppression of the statements. Right. All right. And that's the only issue in the conditional plea? He said that if he excluded those statements, that it would be reversed? The conditional plea allowed him to appeal both the suppression of the statements and the issue of the warrant, both as far as whether there was probable cause stated in the warrant and whether there should be a Franks hearing. That was the nature of the conditional plea. And he gave up his right to a trial, knowing that those statements were going to come in and they should not come in, clearly under your precedent. Now, and I can go on about the Shetlar decision, but I don't think I should. You've got the three prongs, the proximity of the statement, the lack of intervening causes, and the fact that there was police misconduct in this situation. I think that's, pardon my vernacular, a slam dunk. But let's get on, as Judge Smith mentions, to the Franks hearing. I think that one of the most helpful abilities to analyze the Franks hearing is to look at the final investigatory summary of the search warrant affidavit. Our briefs lay out in detail the shifting and changing and contradictory story of the only informant and also about some of the other omissions made by the officers relating to the backpack and other things. But when you look at the affidavit warrant, and this is at ER 135, there's an investigative summary. It would take me just a couple minutes to go quickly through it. It says that the deputies investigated and found evidence that corroborated the victim's report. The only thing that was ever corroborated by this, quote, victim, close quote, was that James Allen was home. There was no other fact that was corroborated by anything that the deputies found. The summary goes on to say she reported that he pointed a pistol at her and during a violent struggle she thought she was going to die. That's actually contradictory in the sense that it contradicts her initial 9-11 call of shots fired. It contradicts her evolving story as to when the shots were filed. And I want to point out, Your Honors, that she doesn't even mention the alleged choking until the officer points out that there's some redness on her neck. It was not part of her 9-11 call or initial report to the police. The investigative summary goes on that she reported Allen filed a shotgun at the residence within the previous 48 hours. That was the last iteration of her story. It was one of the third iterations of when the shots were fired. The deputies interviewed her found redness on her skin, which would be consistent with her story of being grabbed. No, they saw the redness, and then she comes up, and that story itself is not even consistent. It's not consistent in that she originally says that he chokes her with two hands, but she could breathe. Later she says he choked her with his left hand, and her head was going to pop like a balloon. There's just incident after incident where the officers omit this and don't indicate to the magistrate that things have changed. They talk about the security sweep, seeing the shotgun shells, which we know should be going out because the government admits that was inappropriate, and they say in the summary, James Allen made a post-Miranda spontaneous statement that if a pistol was found, Ramsey planted it. Fagan never mentioned a pistol to Allen prior to the statement. Everything in the investigative summary is suspect under the analysis of looking at the facts and what was admitted. This was a situation. Granite Falls is a rural area up here in Snohomish County. They knew who this fellow was. James Allen has a long history of run-ins with the local police. They knew where to go, and they had plenty of time. They had seven hours to get this warrant in shape. There was no reason, as the government admits, that they couldn't wait because obviously the security sweep was not necessary. The other case I think that's very helpful, and I believe Judge Schroeder was on that panel back in 1997, and I'll only mention that once. Who wrote the Sheltner case? That's the Hall case. The Hall case is a case out of Alaska. Judge Smith wasn't even on the court then. No, he wasn't. So he can't be responsible. I tell you, he wasn't even born. Well, I have to confess, I was around and doing this. Well, if you want a majority, I mean a unanimous opinion, you better find one. We did look at what the cases we cited. The Hall case talks about an informant much like Ms. Ramsey who is incredible. I want to point out one very important factual statement, a set of facts here. Ramsey was at that time charged with making a false report concerning domestic violence, which is just what she made to the police here, about James Allen. She told the detectives that. James Allen told the detectives that she had made a false report relating to domestic violence against him. And the deputy recites in the warrant application all the databases that he collects and looks at. And so there's no question that while the warrant does mention the false statement charge, it does not mention that it was a charge involving this defendant for domestic violence. I might point out, and I think the court could take judicial notice of the fact, that since this time, Ms. Ramsey was convicted, actually pled guilty to that charge of making a false statement about Mr. Allen and is currently incarcerated in the state of Washington Penitentiary System. Just briefly, and I'll save the balance of my time for rebuttal if I might, the sentencing issue is very straightforward. We appreciate that there's a long line of cases against this two-point enhancement for the fact that the weapon was stolen. The Eastern District of New York case, I believe it's out of Brooklyn, does an excellent job of summarizing the authorities and why punishing somebody in our system without any kind of mens rea is unconstitutional and violates due process. With the court's permission, I'll reserve the balance of my time for rebuttal. Thank you very much. Thank you, Your Honor. Good morning, and may it please the Court. Nicholas Brown on behalf of the United States. There are three primary issues before the Court today and a fourth issue related to the sentencing to which the defendant concedes has no legal basis. I do think that the correct place to start is with the Franks issue. I want to be sure, Mr. Brown, that the government does concede that the search was unconstitutional as far as the beginning of it is concerned. Is that correct? The initial entry into the home, yes, Your Honor, we do concede that. What we're really talking about here then is whether the balance of the information that was available on the affidavit, primarily from the female accuser here, whether there was enough error and problems in those to vitiate the warrant in the first place. Is that correct? That is correct, Your Honor. So that's where we get to the Franks hearing. Yes. Does the government concede that a Franks hearing is necessary to sort this out? I don't think a Franks hearing is actually necessary, Your Honor. Then why is that? Before you get to that, let me ask one question. Are these two separate issues on the conditional appeal, the motion to suppress statements, and the motion to suppress the evidence? The plea agreement to which the defendant entered in this case, Your Honor, contained a provision that he could appeal should the court overturn any of the basis for his appeal. So I do think that the defense counsel is correct if the court found, for example, that his statements should have been suppressed, that he could retain his right to plead not guilty. But they were tied in the plea agreement altogether. So there are two separate things. Judge Smith has outlined one argument on which he could win, which is that ultimately, if he got the Franks hearing and was upheld, he would win on that. And if we held that the statements should be suppressed, that would be enough for him to win. It would be enough for this court to order that there be remanded to the district court. That's correct. Remanded for trial? For trial. Or to enter into a different plea or do whatever he wants. Correct. Set aside the plea agreement. Correct. I do think it's somewhat disingenuous for defense counsel to claim that the reason he's pled guilty is because the statements were admitted. His DNA was subsequently found on these weapons, confirmed his possession of the two weapons and the ammunition therein. But should he challenge that? Well, he may ultimately regret setting it aside, going back, facing a trial, and getting a longer sentence. He may. But he retains that right should he win on any of the three bases. But so that if we find the statements should have been suppressed, then it's enough to remand and set aside the plea. Or if we find that he should have a Franks hearing, that's enough to remand for a Franks hearing. That is correct, Your Honor. And while I do think the Franks issue is the most prominent one before the court, I would like briefly to talk about the statements issue because that is the one defense counsel began with. From the gunman's perspective, the Shetlar decision is totally distinguishable from the case of Barnier. Who wrote that opinion? It was not Your Honor. Okay. It doesn't count then. In the Shetlar decision, a judge, who shall remain nameless, found that there was a five-hour illegal search by a whole team of officers that included the collection of multiple pieces of evidence. They then found that he was confronted, or the government could not prove he was not confronted, with everything that they found during that search. Distinguish that from the case at Barr where we have a five-minute security sweep. And I say security sweep because there was no search. No evidence was recovered. It went through the house. It went through the house in a matter of about five minutes, which factually makes it entirely different from the Shetlar decision. What makes it even more distinguishable for the government is that he was not interrogated thereafter. In Shetlar, the defendant was interrogated multiple times by law enforcement officers. I think if you look at the record in this case, what Deputy Fagan makes very clear is that he attempted to avoid questioning of the defendant. He talks about how he's driving in the vehicle with the defendant in the back seat, and he's intentionally trying not to question the defendant, who keeps on speaking voluntarily in the back seat. So he wasn't interrogated at all or confronted with any evidence whatsoever. So there is no problem that was raised in Shetlar. It's entirely different both on the nature of the illegal search, which was five hours, as opposed to a five-minute sweep of the home, and he wasn't thereafter confronted. Yeah, and am I correct? Did the district court look at the question of the warrant by taking out all of the information that would have been obtained as a result of the sweep? That is correct, Your Honor. The district court, Judge Gilley, found that there was sufficient probable cause without the limited statements provided by the defendant. But he didn't exercise the statements of the defendant after the sweep. I'm not suggesting it was controlled by Shetlar. I'm just saying that that issue is alive and grand for reversal if those statements should have been suppressed. That is correct, Your Honor. Ultimately, the district court did not suppress those statements, but what he did conclude is that those statements weren't necessary to find probable cause to issue the search warrant in the first instance. Okay. So what is the issue with respect to the statements themselves, then? There's really only a limited number of statements provided by the defendant in terms of their value to the ultimate execution or approval of the search warrant. What Mr. Allen said on being ---- Does it have to be just to the search warrant, or isn't the fact that they are going to be introduced at the trial? Well, if we actually had to try this case, from the government's perspective, there would be little value to the statements at all. But it's an issue that was part of their conditional plea that the statements should have been suppressed for whatever purpose they'd be used for. And it doesn't matter. All that matters is should they have been suppressed or not. That is correct, Your Honor. That is correct. But in terms of the value in corroborating some of the evidence that was provided by the victim in this case, Ms. Ramsey, what Mr. Allen said is he confirmed that she was in the home the night prior, that she came over to the house and was there, confirming exactly what she had reported to law enforcement, putting her in the place that she was, which is one of many reasons that she's easily distinguishable from the informant in the Hall case, for example. There was no connection at all between Mr. Dang, the informant in that case, and the accused, Mr. Hall, in that case. There was no idea or no way they could confirm independently that he even knew Mr. Hall. In this case, what I think establishes the veracity of what Ms. Ramsey provided to the officers are many, many things. One is her extreme basis of knowledge in this case. Here we have a victim who had a four-year relationship with the informant. Law enforcement was able to confirm independently that she, in fact, used to live at the residence in question by looking at the database from the Department of Licensing, which reflected her address was the same as that of Mr. Allen. She also provided that Mr. Allen's mother, Denise Menske, also lived in the home. They were able to confirm that prior to arresting him and executing the search by looking at the databases again and finding that she lived in the home. Well, just suppose, if nothing else, she was living in the home, no doubt. He was living in the home. She knew him well, all of that, but she had made a false report once before about his assaulting her. Well, I wouldn't make that statement that strongly, Your Honor. She had a pending charge related to a false report. The pending charge obviously had not been adjudicated, and from the government's perspective, that has little value before the court. We have no idea whether that was a warranted charge. There's nothing in the record, I should say. But don't you think that's something the magistrate would want to know, that this witness is somebody who is currently facing a false report charged to the police about the same defendant? Well, a fight in this case, including the affidavit, was the fact that she had a pending charge. But not against whom she had made a false report, that it was the same defendant. That is correct, and there's two points on that, Your Honor. First, that the Detective Betts, the affidavit in the case, did not have that information at the time the search was concluded. How can you make that statement? Do you know he didn't have it? Is there something in the record that shows he didn't? Because what is in the record is that the other detective knew it at the time, and the other detective talked to Detective Betts and told him what he knew. Well, it's not clear what the communications were between the two officers. What is clear is that they spoke, and primarily they spoke when Detective Betts informed the officer that he was on the way to the home with the search warrant in hand. However, if you get to the second point, what did that detective who spoke to Ms. Ramsey, in fact, learn about that report? What he learned is that she told him that she had been subject to multiple instances of domestic violence on behalf of the defendant, and that is why she had recanted on one occasion and been charged. So if Detective Betts had learned that information and included it subsequently in the affidavit, from the government's perspective, it doesn't detract at all from her credibility because the reason for her retraction was the fact that she had been threatened and abused by the defendant. But then why put in the fact that there's a false report at all? Well, again, from the government's perspective. The government thought that was significant, that she was being charged with a false report to the police, but not significant that it was against Mr. Allen. Well, I would say that Detective Betts went above and beyond by including a pending charge in the affidavit in the first place. I don't think he had any requirement under the law to do that. Was there any suggestion in the information that the charge might have been against somebody else? I mean, she was the girlfriend. What's in the record is there was a pending charge for making a false statement to a public official. That was what Detective Betts, the affidavit, was able to confirm in the databases. There was no other information that he found by simply looking at the databases. What the officer on scene found was that the victim herself told that she had recanted because she had been threatened previously by Mr. Allen, the defendant. Turning to a few other of the Frank's issues raised by the defense in this case, there are a number of arguments they raised. Let me stop you there one minute. It was at 7.32 or 19.32 that the detective who knew the charge was against Mr. Allen got a call from Mr. Betts, and that's when they discussed what the facts were in the case. That is, I don't think, factually correct, Your Honor. If you're looking at page 263 of the record, I believe. Yeah. If you look at page 263 of the record, what Detective Betts told that officer is the warrant was approved and he was on the way to the home. He doesn't indicate that they had any substantive discussion about what that officer had spoken to Ms. Ramsey about. Now, there's a little inconsistency because Mr. Betts says he spoke with Detective Vanderweide at 7.06. He provided information I hadn't yet heard. Jessica told him she left Mr. Allen's residence. She said he chased her in the car. Further, she stated, then based upon that information, it appeared that it sounds like he gave him the information that's in the warrant. That's from Mr. Betts' statement, how he prepared the warrant. If I could pull it up, Your Honor, just one second. That's page 256. Well, that's correct. I think we can actually tell definitively from that paragraph that they did not discuss the fact that there was this pending charge involving Mr. Allen. He details pretty clearly what, in fact, they did speak about, and that was not the pending charge. Well, when he talked, you knew, and you think he didn't tell them. Well, I think that had he told them, they would have reflected in what Detective Betts was reporting, given the detail that he included in that section of his report. Well, some of the other things he included were pretty helpful to him. The thing that he didn't include was not. Well, I mean, if there's reason based on that to question the veracity of Detective Betts, I suppose we could speculate. No, that he omitted. And, again, what he omitted, Your Honor, omitted from the affidavit was the fact that the victim in this case told the detective on scene that she recanted that information because of threats and violence from the defendant. Had that been included in the affidavit in the first instance, I hesitate to say that that would dissipate probable cause in any way, and in many ways it may actually increase the probable cause. He does say this resulted in cases being dismissed and in one instance of being charged with false reporting. That's correct, Your Honor, and just above that. It doesn't say false reporting about Mr. Allen. You don't think that's something that a detective would have been concerned about? I certainly think there's nothing in the record to suggest that that was communicated to the person who drafted the affidavit. Well, maybe I have more confidence in detectives' ability. When one detective told the other about that she had been charged with a false report to the police about somebody and didn't mention that it was the same defendant as in this case? The burden is on the defense to prove that it was intentional or made in reckless disregard for the truth. Well, that's what we do in the Frank theory. Do you think it would have made a difference to the magistrate? I don't at all, Your Honor. If they had known that there had been a prior recantation of the charge against them? If they had known in the context that it was provided to the person on scene that she had recanted previously because she had been threatened or abused by the defendant, I don't think that that would take away from the probable cause or credibility provided by that victim at all. I see I'm out of time. Well, how about the fact that one detective reported that she was under the influence of drugs and alcohol, particularly meth at the time she told him this story, and the affidavit says she was in good shape or calm and rational, and the other one says she's under the influence of meth. Those two are consistent? It's actually the same officer that made both reports, and so I think that's an important distinction. In his written statement in the report, he indicated that during her recount of the offense that she was calm and rational. She also indicated that she had used meth with the defendant the night prior. That same detective in a supplemental report simply checked a box under the influence of drugs or alcohol. The government would submit that's probably likely based on her self-report that she had, in fact, used methamphetamine. There's no indication. On a different occasion? The night prior. Yeah. Well, you know, that's also very strange to me that you would say when you make a report about somebody and you say she's under the influence of drugs and alcohol, you're talking about on some previous occasion, the day before. I would respectfully disagree, Your Honor. I think it's simply a reflection of what the victim had told the officer that she had used meth because if that same officer had legitimately felt by her observations that she was, in fact, under the influence of meth, he probably would not have included in his written statement that she was calm and rational. Well, it's odd that he said that she was calm and influenced because he did say she was under the influence of meth. He had once been under the influence of meth, but that she was under the influence. He checked a box that has really no room for any other conclusion, simply under the influence and you check a box. But I think what you're saying. What does under the influence mean? Does it mean you were once under the influence or you are under the influence? Well, I would presume it meant currently under the influence, but I actually think that his checking of the box was simply a reflection of her report to him that she had used. Saying that she had taken it. Correct. Not inconsistent with her demeanor. Right, because her demeanor was calm and rational. There's no further questions. Procedurally, I would suggest the order of analysis is as follows. The analysis of the statements, I think they should be suppressed. You remand. Now, the next stage would be to look at the warrant and view it on its face at this point, which is a de novo consideration by you. You could conclude at that point, without even getting to the Franks issue, Judge Smith, that the warrant is insufficient. We suggest it is. We feel that it was. That would be based on Stetler, right? Yes. We know who wrote that. Yes. Well, no. That's the first point. That's the first point. The second point is the warrant. The second point is based on Hall. Hall wrote it. Hall. We know who wrote that, too. Well, you need a third point on Franks. You got one from Judge Smith? So that second level of analysis is when you remand it, you might also tell the district court not only are the statements suppressed, but the evidence from the search is suppressed because the warrant is facially invalid. Then the next level of analysis is a Franks hearing, and that's where it really gets good, in my opinion. You look at some of her statements that don't make the warrant, where she's there 48 hours ahead of time, and they tried to run her down with a Cadillac, and she jumps in the ditch, where she comes back, where she talks about how when she leaves the house, on one occasion she runs for her life. The next occasion she walks out and sits down because she doesn't know where to go. We actually know she was hiding a backpack, which she didn't talk about until they found it, which doesn't reach the warrant application. And the third thing she says is, I walked down the road a while, realized I didn't have my cell phone charger, and went back to get it from this, quote, crazy man who's trying to kill her. The other one of the facts I look at there, the deputies go around the back of the house before James comes out, and they see him walking around on the deck, talking on his cell phone, smoking a cigarette, all in contrary to her statement that he's crazy, he's on meth, he's acting wild. In our reply brief, we list on page five to page six all the analysis that relates to the statements that Ms. Ramsey told the officers. She had a pending charge. The food chain is all laid out there on page five to six. On page eight of our reply brief is the issues relating to the time of when the warrant is faxed and issued and executed. So when you put those two together, here's what you know. You know that Ramsey told the officers, and in fact that Betz knew, that the false reporting charge related to James Allen. You have James Allen saying to the officers that she's charged with a false reporting statement and that it involves me for domestic violence. And then you have the fact that the deputy had the ability and did admit in the affidavit that he searched all the relevant databases to her, and he obviously could have checked that as well. The Ramirez decision we cite, and I apologize, I don't know who authored it. Let's give her a present. What good are you? That points out that this information is attributed to the brother officers and is that way. Lastly, in the event that you don't simply find the warrant facially inadequate and you do remand with or without a direction that a Franks hearing be held, there is at last the sentencing issue, which I won't belabor. Thank you very much, Your Honors. Thank you. Thank you. Well... The apples.
judges: Schroeder, Reinhardt, Smith